IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KRYSTA BESSER**, *et al.*, | Case No. 3:23-cv-1438-SI |
| Plaintiffs, | **ORDER** |
| v. | |
| **LEGACY HEALTH**, | |
| Defendant. | |

**Michael H. Simon, District Judge.**

Plaintiffs Terese Lampa and Thomas Wray[1] have sued their former employer Legacy Health ("Legacy"). In their Complaint (ECF 1), Plaintiffs Lampa and Wray assert two claims for unlawful employment discrimination. They first allege a violation of Oregon Revised Statutes ("ORS") § 659A.030. They next assert a violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. They also contend that Legacy terminated their employment after they refused to comply with Legacy's COVID-19 vaccine mandate on the grounds that receiving the COVID-19 vaccine conflicts with their sincerely held religious beliefs. Now pending before the Court is

---

[1] The parties submitted a status report on July 30, 2025, noting that they have resolved all claims asserted by Plaintiffs Krysta Besser, John Chanouzas, Ramona Dragomir, Ida Huber, Heidi Kline, Jonna'K Polley, Kathleen Terlecki, and Jimmie Jaramillo, Sr. *See* ECF 19. Accordingly, the only remaining Plaintiffs are Terese Lampa and Thomas Wray.

PAGE 1 – ORDER

Legacy's motion to dismiss only the claims asserted by Wray. *See* ECF 5. Legacy argues that Wray has failed to plead facts sufficient to show that he had a "religious" belief that conflicted with Legacy's vaccination policy.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## REGULATORY BACKGROUND

On August 13, 2021, amid the surge in COVID-19 cases, the Governor of Oregon issued Executive Order 21-29 (the "EO"). In the EO, the Governor explained that the 2021 summer surge in COVID-19 infections "is imperiling the state health system's ability to manage not just COVID-19 patients, but also those who require specialized medical care after car accidents, heart attacks, and other medical emergencies" and that "employer vaccination requirements have become an important tool" for managing the surge. The EO required that state executive-branch employees be "fully vaccinated" against COVID-19 by the later of October 18, 2021, or six weeks after the date that the Food and Drug Administration ("FDA") approves a COVID-19 vaccine. The EO allowed for exceptions for individuals unable to be vaccinated due to disability, a qualifying medical condition, or a sincerely held religious belief.

After the FDA approved the COVID-19 vaccine on August 23, 2021, the Oregon Health Authority ("OHA") adopted similar vaccination rules. One of those rules, then-codified at Oregon Administrative Rule ("OAR") 333-019-1010, is known as the "Healthcare Order."[2] Originally adopted on August 25, 2021, and then modified on September 1, 2021, the Healthcare Order explained, in relevant part:

> Healthcare providers and healthcare staff have contact with
> multiple patients over the course of a typical day and week,
> including providers that provide care for people in their homes.

---

[2] The OHA suspended OAR 333-019-1010 in mid-2023 and repealed it effective June 30, 2023.

PAGE 3 – ORDER

> Individuals cared for in these settings are more likely than the
> general public to have conditions that put them at risk for
> complications due to COVID-19. COVID-19 variants are running
> through the state's unvaccinated population and causing an
> increase in breakthrough cases for those who are fully vaccinated.
> This rule is necessary to help control COVID-19, protect patients,
> and to protect the state's healthcare workforce.

OAR 333-019-1010(1) (effective Sept. 1, 2021). Based on these concerns, the Healthcare Order provided that after October 18, 2021, "A health care provider or healthcare staff person may not work, learn, study, assist, observe, or volunteer in a healthcare setting unless they are fully vaccinated or have provided documentation of a medical or religious exception." OAR 333-019-1010(3)(a) (Sept. 1, 2021).[3]

---

[3] The Healthcare Order defined "healthcare providers and healthcare staff" as:

> [I]ndividuals, paid and unpaid, working, learning, studying,
> assisting, observing or volunteering in a healthcare setting
> providing direct patient or resident care or who have the potential
> for direct or indirect exposure to patients, residents, or infectious
> materials, and includes but is not limited to any individual licensed
> by a health regulatory board as that is defined in ORS 676.160,
> unlicensed caregivers, and any clerical, dietary, environmental
> services, laundry, security, engineering and facilities management,
> administrative, billing, student and volunteer personnel.

OAR 333-019-1010(2)(d)(A) (Sept. 1, 2021). The Healthcare Order defined "healthcare setting" as:

> [A]ny place where health care, including physical or behavioral
> health care[,] is delivered and includes, but is not limited to any
> health care facility or agency licensed under ORS chapter 441
> or 443, such as hospitals, ambulatory surgical centers, birthing
> centers, special inpatient care facilities, long-term acute care
> facilities, inpatient rehabilitation facilities, inpatient hospice
> facilities, nursing facilities, assisted living facilities, residential
> facilities, residential behavioral health facilities, adult foster
> homes, group homes, pharmacies, hospice, vehicles or temporary
> sites where health care is delivered (for example, mobile clinics,
> *ambulances*), and outpatient facilities, such as dialysis centers,
> health care provider offices, behavioral health care offices, urgent

In late 2021, the United States Secretary of Health and Human Services (the "Secretary"), who administers the Medicare and Medicaid programs, issued an interim final rule amending the existing conditions of participation in Medicare and Medicaid to add a new requirement—that facilities ensure that their covered staff are vaccinated against COVID-19. Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61555, 61616-27 (Nov. 5, 2021). The rule required providers to offer medical and religious exemptions and did not cover staff who teleworked full-time. *Id.* at 61572. The rule further provided that a facility's failure to comply with the vaccination requirement may lead to monetary penalties, denial of payment for new admissions, and ultimately termination of participation in the programs. *Id.* at 61574. As explained by the Supreme Court, "[t]he Secretary issued the rule after finding that vaccination of healthcare workers against COVID-19 was 'necessary for the health and safety of individuals to whom care and services are furnished.'" *Biden v. Missouri*, 595 U.S. 87, 91 (2022) (quoting 86 Fed. Reg. at 61561). The Supreme Court upheld the Secretary's rule as within the Secretary's authority provided by Congress. *Id.* at 93. The Supreme Court added:

> COVID-19 is a highly contagious, dangerous, and—especially for Medicare and Medicaid patients—deadly disease. The Secretary of Health and Human Services determined that a COVID-19 vaccine mandate will substantially reduce the likelihood that healthcare workers will contract the virus and transmit it to their patients. 86 Fed. Reg. 61557-61558. He accordingly concluded that a vaccine mandate is "necessary to promote and protect patient

---

care centers, counseling offices, offices that provide complementary and alternative medicine such as acupuncture, homeopathy, naturopathy, chiropractic and osteopathic medicine, and other specialty centers.

OAR 333-019-1010(2)(e)(A) (Sept. 1, 2021) (emphasis added).

PAGE 5 – ORDER

health and safety" in the face of the ongoing pandemic. *Id.*, at 61613.

*Id.* In mid-2023, the Secretary issued a new rule withdrawing the vaccination requirement. Policy and Regulatory Changes to the Omnibus COVID-19 Health Care Staff Vaccination Requirements, 88 Fed. Reg. 36485, 36488 (June 5, 2023) (effective Aug. 4, 2023).

## FACTUAL BACKGROUND

Wray alleges that he worked for Legacy for about nine years, until Legacy terminated his employment on October 19, 2021. Compl. ¶¶ 42-43. Wray worked for Legacy as a dispatcher and courier lead, "became a superuser for Legacy's new tracking system," checked-in patients, answered patient questions, and assisted phlebotomists with difficult blood draws. *Id.* ¶ 42. Wray alleges that he received positive reviews and accolades from management and coworkers. *Id.* Wray states that he has "deeply held Christian beliefs," including that "God loves and protects him." *Id.* ¶ 43.

Wray alleges that the COVID-19 pandemic began in March 2020. *Id*. ¶ 3. He asserts that he "maintained the strictest adherence to the safety standards employed by [Legacy] during the pandemic to alleviate or eliminate the risk of infection, including the wearing of personal protective equipment (PPE), regular handwashing, social distancing, regular testing, and quarantining when necessary." *Id.* In the summer of 2021, Legacy announced that it would be implementing and enforcing a COVID-19 vaccine mandate in the workplace. *Id.* ¶ 4. Legacy informed its employees that individuals who held religious beliefs that conflicted with taking the vaccine could apply for a religious exception. *Id*. Wray states that he objects to taking the vaccine because "God told him not to get the COVID-19 vaccine." *Id.* ¶ 43. On September 10, 2021, Wray presented to Legacy his written request for a religious exception. *Id*. Legacy denied the exemption request, placed Wray on unpaid leave on October 1, 2021, and terminated his

employment on October 19, 2021. *Id.* Wray alleges that Legacy failed to make a good-faith effort to accommodate his religious beliefs and instead engaged in a series of adverse employment actions against him. *Id.* ¶¶ 57-58, 63-64.

## DISCUSSION

Under Title VII, it is unlawful for a covered employer "to discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case for religious discrimination, the employee must demonstrate:

> (1) she had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements.

*Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998) (citation omitted). If the employee establishes a *prima facie* case, the burden shifts to the employer to prove that it either "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.*[4]

"[T]he burden to allege a conflict with religious beliefs is fairly minimal." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023). But that "does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face value." *Id.* (citing *Oklevueha Native Am. Church of Haw., Inc. v. Lynch*, 828 F.3d 1012, 1016-17 (9th Cir. 2016)).

---

[4] State law is similar. ORS § 659A.030 provides that it is an unlawful employment practice for an employer to discriminate against an individual in the terms and conditions of employment because of a person's religion, among other things. ORS § 659A.030(1)(a). Claims brought under this statute are analyzed the same way as claims brought under Title VII. *See Dawson v. Entek Int'l*, 630 F.3d 928, 934 (9th Cir. 2011); *Henderson v. Jantzen, Inc.*, 79 Or. App. 654, 657 (1986).

As noted, Wray alleges that he holds Christian beliefs and has serious objections to taking the vaccine because "God told him not to get [it]." Legacy's motion to dismiss is based solely on its argument that Wray pleads only conclusory statements about his religious beliefs and does not articulate a conflict between these beliefs and the vaccine mandate. Wray responds that he has pleaded specific facts alleging that the COVID-19 vaccine mandate was antithetical to his sincerely held religious beliefs.

Contrary to Legacy's assertion, Wray does not merely assert that he is a Christian or that his body is a temple but specifically alleges that he believes that God has told him not to get the COVID-19 vaccine. This allegation, while brief, explains the connection between Wray's religious beliefs and his refusal to receive the COVID-19 vaccine. Accordingly, it satisfies the "minimal" standard needed to allege a conflict with a religious belief. At the motion to dismiss stage, Wray sufficiently has alleged a religious belief that conflicts with the vaccine mandate.

## CONCLUSION

The Court DENIES Legacy's Motion to Dismiss for Failure to State a Claim. ECF 5.

**IT IS SO ORDERED**.

DATED this 28th day of August, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge